## WILLIAM McGREGOR

<em>v</em>

## JOHN McDEVITT.

NEW TRIAL—*verdict against the evidence.* In this case the finding of the court below is regarded as against the weight of the evidence, and the judgment is, for that reason, reversed.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Mr. S. M. Davis, for the appellant.

Messrs. Hoyne, Horton & Hoyne, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

In November, 1868, McDevitt, the appellee, held a note for $1500 against Wm. F. Noye, who turned out as collateral security for its payment, a steam engine and two boilers. The boilers were at the shop of Devine Brothers for repairs. The engine was left with McGregor, the appellant, who gave the following receipt therefor:

> "Chicago, November 19, 1868.
>
> "Received of John McDevitt, of Pittsburgh, Penn., one (1) steam engine, 14 inch ⋈ 26 inch; also two (2) 2-flue boilers, 40 inch ⋈ 14 feet. The steam engine now at my shop; boilers at Devine & Brothers' boiler shop. The above property to be sold for account of John McDevitt.
>
> "W. McGregor."

Some two years afterward, the engine being in a wholly unsalable condition by reason of being out of repair, it was taken to the shop of Peattie & Son for repairs, by Noye, who, when the engine and boilers were repaired, sold them.

McDevitt brought suit against McGregor to recover the value of the engine and boilers. The cause below was tried by the court, a jury having been waived. The plaintiff recovered and the defendant appealed.

The question presented on the record is one of fact, turning principally upon the points whether McGregor was guilty of such negligence in the care of the property as to render him liable, and whether McDevitt was bound by the acts of Thomas Lonergan, his alleged agent.

In our view, the evidence shows that the engine was removed from McGregor's to the shop of Peattie & Son for repairs, with the consent of Lonergan, and that after the engine and boilers were repaired, they were taken and sold by Noye, with the consent of Lonergan.

This is positively testified to by Noye, and we do not understand it to be denied by Lonergan. He only states that he did not think he directed McGregor to send the engine for repairs, and was quite sure that he did not, and that he informed McGregor and, he thinks, Noye, that he had no authority to do anything in regard to the engine and boilers.

McDevitt resided in Pittsburgh, Pennsylvania, and Lonergan in Chicago. Lonergan took the note from Noye, and seems ever since to have held possession of it; it was payable at the office of Lonergan; the note bears upon it two receipts of $500 each, one dated Dec. 16, 1869, the other Jan. 5, 1871, both signed with the initials of Lonergan's name, "T. L.," and also an indorsement in blank, "John McDevitt, per Thomas Lonergan." Lonergan testifies that he had the engine taken to the store of McGregor for sale on commission, and that McGregor gave him the receipt, although he likewise states that young McDevitt, who was his bookkeeper, and the son of the plaintiff, was present and wrote out the receipt, and was also acting as his father's agent in the matter, and had as much to do with it as he had.

It is true, Lonergan testifies that he was not the agent of McDevitt except to take the note from Noye, and that he had no authority to do anything in regard to the engine and boilers. But this is very much the conclusion of the witness. He does not state the facts; they are better evidence of the authority than the opinion of the witness. He may misapprehend the legal effect of the facts, and it is not so much a question of actual authority as with what authority the agent was ostensibly invested. The possession of the note by Lonergan evidenced an authority to receive payment of it. And he being entrusted with the possession of these collaterals, and

he himself placing them in the hands of McGregor for sale, an authority might fairly be inferred to place them in the hands of any one else, or to transfer them from McGregor to any one else to be sold, and even to Noye himself, if in his judgment he deemed it best. We think, under all the circumstances, Lonergan was held out as having a disposing power over these articles, and that McGregor was justified in believing that Lonergan had power to deal with, and direct in regard to them, and whatever was done in regard to the property with the concurrence or assent of Lonergan, forms no just cause of complaint.

McGregor was only responsible for the exercise of ordinary care and diligence in the care and custody of the property. The engine was in an unsalable condition from being out of repair. The sending it to Peattie & Son's shop to be repaired, in order that sale might be made of it, would seem to have been a proper act. The taking it away from the shop of Peattie & Son by Noye after it was repaired, as well as the sale of it and the boilers by him, was without the consent or knowledge of McGregor.

As soon as he learned of the sale, and before the property was shipped, and while there was an opportunity to recover it, he applied to Lonergan for that purpose, and was evidently misled and induced, by the conduct and seeming acquiescence of the latter in Noyes' disposition of the property, to forego taking any steps to recover it; whereas, if McGregor had been given to understand, by Lonergan, as he should have been, that he would be looked to for the value of the property, he would doubtless have regained the possession of it before it was shipped away. Peattie, too, having given his receipt to McGregor for the engine, made a like application to Lonergan, and with a similar result. The boilers never were in the possession of McGregor. At the time the receipt was given, they were in the shop of the Devine Brothers for repairs; they were taken away from there and sold by Noye, without the consent or knowledge of McGregor. McGregor

says at the time the receipt was given, Lonergan mentioned where the boilers were, and that they would be delivered to him when repaired. Lonergan says the boilers were accepted by McGregor the same as if they had been delivered. That may be but his inference from the tenor of the receipt.

We do not perceive wherein McGregor has failed in the use of reasonable and ordinary care and diligence in regard to the property.

Whatever loss has occurred is chargeable rather to the conduct of Lonergan, the agent of McDevitt, than to the negligence of McGregor.

We are of opinion the finding of the court for the plaintiff was against the clear weight of the evidence.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*